**KARISH & BJORGUM, PC**
A. Eric Bjorgum (State Bar No. 198392)
Eric.bjorgum@kb-ip.com
Marc Karish (State Bar No. 205440)
Marc.karish@kb-ip.com
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile:  (213) 995-5010

Attorneys for Plaintiff
EXTRASENSORY SOFTWARE, INC.

## UNITED STATES DISTRICT COURT

## IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

EXTRASENSORY SOFTWARE, INC., a California Corporation, d/b/a Fish Tuning,

            Plaintiffs,

      vs.

SOCAL DIESEL, INC., a California Corporation; GUY TRIPP, an individual; TRACEY TRIPP, an individua; TRIPPIN INC., a California Corporation; TORQUEXRPM INC., a California Corporation; EFILIVE LIMITED, a New Zealand Corporation; and DOES 1-10,

            Defendants.

Case No. 24-cv-2304

**COMPLAINT FOR:**
1) **Violation of the Sherman Act § 2 – 15 U.S.C. § 2**
2) **Violation of the Clayton Act § 3 – 15 U.S.C. § 14**
3) **Interference with Prospective Economic Relations; and**
4) **Unfair Business Practices – Cal. Bus & Prof. Code § 17200 *et seq.***

**DEMAND FOR JURY TRIAL**

Plaintiff Extrasensory Software, Inc., ("Extrasensory") by and through its undersigned counsel, brings this Complaint and Jury Trial Demand against SoCal Diesel, Inc. ("SoCal Diesel"), Guy Tripp ("Guy" or "Mr. Tripp"), Tracey Tripp ("Tracey" or "Mrs. Tripp"), Trippin Inc. ("Trippin"), Torquexrpm Inc. ("Torque"), EFILive, Limited ("EFILive"), and John Does nos. 1 through 10 (collectively, "Defendants"), seeking damages and declaratory and injunctive relief, and in support thereof, state as follows:

## SUMMARY OF THE ACTION

1.      By this action, Plaintiff seeks to hold Defendants responsible for their unlawful anticompetitive conduct in the marketplace—which includes both unlawful vertical restraints and tying arrangements—as well as their knowing facilitation of the violation of federal and state vehicle emissions standards, which both pollutes the air we breathe and exacerbates climate change through the release of illegal levels of greenhouse gases.

2.      Through various entities that they own and control, defendants Guy and Tracey Tripp have engaged in a conspiracy to monopolize the market for certain necessary components in the market for diesel engine software modifications.  At the same time, they are attempting to avoid domestic regulatory agencies by keeping certain corporate assets hidden behind an ostensibly New Zealand-based company, while the Environmental Protection Agency shuts down their customers and distributors at a rapid pace.  This industry is being decimated because, as Defendants well-know, the engine tuning software they sell from offshore servers is used by thousands of customers to violate federal and state vehicle emissions standards.

3.      Almost every customer needs to buy a switch that allows interaction with the software.  "Authorized" access to the software comes only from using an "authorized" switch, controlled by an algorithm that one Tripp-owned company

(the manufacturer) conveniently licenses to another Tripp-owned company (the distributor) for a de minimis fee.

4.      Defendants have used this licensing scheme and their control of the market to exclude others from the market for these switches, which they falsely claim must be "authentic" because of "alleged" safety issues for diesel truck "racers" who buy their products.  Yet they refuse to deal with and allow others to make the switch under any circumstances, including paying the licensing fee they pay themselves.  More importantly, they have specifically installed an unnecessary algorithm "lock" on their software in an attempt to prevent other tuning switches, like those manufactured and sold by Plaintiffs, from being compatible with Defendants' software.

5.      The Tripps' empire is not only an unlawful monopoly, but it is built upon scam after scam.  First, the software they sell is itself copied from actual Cummins and Duramax operating systems.  Second, copying or "flashing" their software onto a diesel engine potentially voids all manufacturer warranties.  Third, there is no doubt that the performance of the vast majority of these software settings violates the Clean Air Act.  The "diesel racing" façade for emissions violators is so prevalent and incredible that the EPA's own website identifies the argument as patently baseless. Finally, every individual vehicle that is loaded with EFILive's software requires a new license, and, on information and belief, those licenses are obtained via offshore computer servers that operate as virtual cash machines well beyond the reach of any regulatory, governmental or taxing authority.

6.      In short, the Tripps have sought vertical control of an accessories market for their own product, which infringes the copyrights of American manufacturers and is unsafe on the road and for the environment.  They have used their monopoly position in the market to squelch better products, such as

Plaintiff's, which feature superior design, superior workmanship, and superior customer service—all at a lower price point.  This illegal tying arrangement thus harms not just competitors but consumers.

7.     Through this Complaint, Plaintiff seeks to hold the Tripps and their entities accountable for their anti-competitive and unfair business practices.  Defendants have undertaken these acts for the purpose of wrongfully preventing a competitor with a lower-cost and superior switching product from participating in the market, to the ultimate detriment of consumers.  On information and belief, they have also refused to allow others to compete in this market.

## **PARTIES**

8.     Plaintiff Extrasensory Software, Inc., is a California corporation with its principal place of business in this district. .

9.     Defendant Guy Tripp is an individual who resides within the County of Los Angeles, State of California.

10.     Defendant Tracey Tripp is an individual who resides within the County of Los Angeles, State of California.

11.     Defendant SoCal Diesel, Inc., is a California corporation, with its primary place of business in the County of Los Angeles.  Defendants Guy and/or Tracey Tripp are the sole officers and directors of SoCal Diesel, and, directly or indirectly, are the sole shareholders.

12.     Defendant Trippin Inc. is a California corporation.  Its office and mailing address in Los Angeles County, California, is the same as that of SoCal Diesel.  Defendants Guy and/or Tracey Tripp are the sole shareholders, officers, and directors of Trippin.

13.     Defendant Torquexrpm Inc. is a California corporation.  Its office and mailing address in Los Angeles County, California, is the same as that of

both SoCal Diesel and Trippin.  It was incorporated on the same day as Trippin, and other than the name of the company, its articles of incorporation and statement of information filed with the California Secretary of State are identical to those of Trippin.  Defendants Guy and/or Tracey Tripp are the sole shareholders, officers, and directors of Torque.  On information and belief, Torque and Trippin collectively own 100% of SoCal Diesel.  Thus, Guy and Tracey Tripp indirectly own 100% of SoCal Diesel.

14.     Defendant EFILive, Limited, is ostensibly a New Zealand corporation, which has transacted business, including business relevant to this case, within the County of Los Angeles, State of California.  On information and belief, Guy and/or Tracey Tripp, either directly or through Torque and Trippin, collectively own a 100% stake in EFILive.

15.     On information and belief, both Trippin and Torque are sham entities that were formed for no purpose other than to obscure Guy and/or Tracey Tripp's ownership of EFILive.  On information and belief, Guy and/or Tracey Tripp sought to obscure their ownership of EFILive for at least two reasons.  First, they sought to conceal the fact that their joint ownership of both EFILive and SoCal created serious antitrust concerns.  Second, they sought to maintain the fiction of EFILive as a New Zealand company to avoid EFILive being subject to California or federal jurisdiction and thus being held accountable by the U.S. Environmental Protection Agency (EPA) or the California Air Resources Board (CARB) for creating and selling a diesel engine modification software system that it knew and intended purchasers would use to violate state and federal vehicle emissions standards.  On information and belief, Torque and Trippin have no operations or assets separate and apart from their ownership of EFILive Limited.  The entity Defendants are all the alter egos of each other and of Guy and Tracey Tripp.

16.     The true names and capacities of the Defendants named herein as Does 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs who therefore sue such Defendants by fictitious names.  Plaintiff is  informed and believes that DOE Defendants 1 through 10 are California residents and/or parents, subsidiaries, and/or sister corporations to Defendants and/or individuals responsible for the acts alleged herein.  Plaintiff will amend this Complaint to show such true names and capacities when they have been determined.

17.     Plaintiff is informed and believes, and on that basis alleges, that each Defendant was in some manner responsible for the acts and damages alleged herein, and/or are indebted to Plaintiff as alleged herein, and that each Defendant participated in the acts alleged herein and that, in participating in such acts, each Defendant was the agent and co-conspirator of each other Defendant, and was acting in the course and scope of such agency and conspiracy.

## JURISDICTION AND VENUE

18.     This Court has federal question subject matter jurisdiction over Plaintiff's Sherman Act and Clayton Act claims pursuant to 28 U.S.C. 1331.  The Court has supplemental jurisdiction over the claims for interference with prospective economic relations and unfair business practice, which are so related to the federal law claims that they form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

19.     Personal jurisdiction over Defendants exists because Defendants live in California or are incorporated in California, do business in California, and/or have had sufficient contacts with California to warrant the assertion of such jurisdiction, including but not limited to substantial contacts relating to the injurious acts at issue herein.

20.    Defendants Guy Tripp and Tracey Tripp are residents of Los Angeles County, California. Defendants SoCal, Torque, and Trippin are all California corporations with their principal places of business in Los Angeles County, California.

21.    Defendant EFILive's ostensible status as a New Zealand entity is a sham undertaken for the purpose of avoiding jurisdiction in California and the United States.  In any event, even if EFILive is a New Zealand resident, personal jurisdiction over EFILive is proper.

22.    EFILive has entered into one or more licensing agreements with a California resident, Defendant SoCal, regarding software at issue in this litigation. These agreements were entered into with an anticompetitive purpose—including specifically to prevent Plaintiff a resident of California, from competing with SoCal—and have had an anticompetitive effect, resulting in the harm to Plaintiff alleged herein.

23.    EFILive's interactive website, EFILive.com, supports customers located in the United States purchasing its products, including software at issue in this litigation, directly from the website. In fact, EFILive's website is customized to be responsive to U.S.-based customers specifically. When a customer located in California clicks on a product featured on EFILive's website, the website automatically lists the purchase price in U.S. dollars.

24.    In addition, EFILive's website indicates that at least 55 different distributors throughout the United States sell its products (which include the software related to this case), four of which are located in the state of California. This is more than twice the number of EFILive product distributors than the rest of the world *combined* (24).  Indeed, EFILive's website lists only a single distributor in New Zealand, only three in all of neighboring Australia, and only two in the entire United Kingdom.  On information and belief, the vast bulk of

EFILive's worldwide sales occurs in the United States; and information and belief, EFILive sells more of its products in California than in any other state within the United States.

25.     Further, the registrar for "EFILive.com" is listed on ICANN as "Domains By Proxy, LLC," a company based in Tempe, Arizona. According to its Wikipedia page, Domains By Proxy is "used by a number of organizations that target vulnerable individuals by sending threatening psychic letters, and fake drug companies. It is also used by fake anti-spyware and anti-malware sites to hide their real ownership of the software that they promote." EFILive has a direct contractual relationship with this U.S.-based company. Further, EFILive's website utilizes as its nameserver Xura, Inc. (formerly Comverse, Inc.), a company based in Wakefield, Massachusetts, and with one or more offices in California. On information and belief, this is yet another direct contractual relationship EFILive has with a U.S.-based company. EFILive engaged in intentional acts when entering into these contractual relationships, which intentional acts are undertaken to facilitate conducting its business, including regarding software at issue in this litigation, within California and the United States.

26.     Per Similarweb, a respected Internet analytics company, 81% of EFILive's Internet traffic arises from the United States.  On information and belief, certain EFILive products are emailed from a domain name owned by Defendant SoCal Diesel, Inc.

27.     Defendants are amenable to service of process pursuant to the state Long-Arm Statute, Fed.R.Civ.P. 4(e) &(k)(2) and the law of the Ninth Circuit.

28.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are residents of California and one or more of them resides in this judicial district, and is proper pursuant to 28 U.S.C. § 1391(b)(1)

because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

29.     To the extent that EFILive is deemed to be a resident of New Zealand and not a resident of the United States, venue is still proper under 28 U.S.C. § 1391(c)(3) ("a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants").

**GENERAL ALLEGATIONS**

**EFILive's "Tuning" Technology**

30.     EFILive is a manufacturer and distributor of products used for modifying the "tuning" parameters used by electronically fuel injected diesel vehicles.  EFILive products allow users to modify and store parameters including those controlling the timing and fuel and air mixture used by the vehicle's ECM, an electronic component in a vehicle which controls the fuel injection.  By changing these parameters, or "tunes," a user can change how the engine performs.

31.     Stock-programmed ECMs cannot typically handle multiple sets of parameters, so EFILive's optional custom operating systems allow storage of multiple sets of parameters for controlling engine performance.  These multiple sets of parameters, when used along with an optional switch or other switching mechanism, allow the engine to have different modes of operation, *e.g.*, high fuel economy, high power/lower fuel economy, cleaner burning, etc. EFILive had the first products that would allow for highly customizable tuning of diesel truck engines, and it was also the first to introduce "switchable" tuning.  EFILive's place as the first-to-market in highly customizable and switchable tuning gave it significant advantages and brand recognition in the market, which it enjoys to this day.

32.     The ECM is connected to the vehicle's "Controller Area Network" ("CAN") bus.  (A "bus" is simply any conduit or pathway, and in this case consists of a wire that transmits data.) The CAN bus is a conduit for signals from all over the car to reach the ECM.  For instance, a mechanic can connect a scanning device to a vehicle's CAN bus to diagnose problems with the engine.  There is a plug-in port (called the OBD-II port) on the vehicle's dashboard that allows access to the CAN bus.  EFILive's products attach to that port—first to reprogram the ECM to accept the tunes, and then when possible, may be used to switch between the available tunes in a suitably modified ECM.

**Defendant SoCal Diesel's CSP5 Switch**

33.     EFILive's switchable tuning product required some way to switch between the tunes.  Rather than have a cumbersome hand-held device continually hooked up to the OBD-II port, EFILive's switchable tuning system contemplated an external switch mounted on the dashboard.  Defendant SoCal Diesel makes an electronic switch that will connect to the OBD-II port and direct the ECM to change between tunes.  The version of the device at dispute in this case is called a CSP5 switch, for "Cummins Switchable Programs" with five options.  (Cummins is the primary manufacturer of diesel engines for Dodge diesel trucks, and one of the largest manufacturers of diesel truck engines in the country.)

34.     Defendant SoCal Diesel is one of two authorized distributors of EFILive products in the United States.  It also makes a variety of accessories for the diesel and performance automotive markets.   EFILive chose SoCal Diesel to be the sole authorized source of the hardware version of the switch needed to change the switchable tuning parameters.  There is a far less popular software version of the switch that operates on a phone.

**Plaintiff's Competing Switch**

35.     Plaintiff Extrasensory, makes a switch that competes with Defendant SoCal Diesel's switch.  Extrasensory's technology officer Ira Emus has decades of experience in aftermarket automotive component design, engineering, and servicing.  Plaintiff's switch retails for somewhat less than SoCal Diesel's switch and, on information and belief, it features a superior design and workmanship. But for Plaintiff's switch to work with EFILive tunes, it needs a certain algorithm to interface with the ECM.  This algorithm is a cornerstone of Defendants' anticompetitive scheme.

**EFILive Adds a Software "Lock"**

36.     For switchable tuning software to work on most systems, there is no requirement that there be a "locking" mechanism.   However, after Plaintiff began selling its competing Cummins-compatible tuning switch, EFILive eventually decided to put a software "lock" on its CSP5 switch to prevent Plaintiff's switch from competing in the market.  And in doing so, it collaborated with Defendant SoCal and another "competitor."

**Defendants' Intentional Efforts to Exclude Plaintiff from the Tuning Switch Market**

37.     The timing of EFILive's decision to add a software lock was no accident.  For years, Plaintiff was a distributor of EFILive's products.  However, their relationship broke down, and EFILive terminated Plaintiff.  When EFILive learned Plaintiff was working on a compatible switch, it made it clear that they would do whatever it took to thwart Plaintiff and its principals, Ira and Robyn Emus.

38.     The animosity went so deep that the software "lock" was created with Plaintiff in mind during the collaboration between EFILive and two of its domestic affiliates.  One of those was Defendant SoCal Diesel (owned by

Defendant(s) Guy and/or Tracey Tripp), and the other was StarLite Diesel, Inc. ("StarLite"), the other licensee of EFILive's algorithm (owned by Zach Fuller).

39.    Tuning a single truck requires acquiring turning software and hardware or a tune along with a flash tool to install the tune that can run into thousands of dollars. As "authorized" resellers of EFILive, SoCal and StarLite compete with each other (and others) in the market for tuning software.  They do not compete, however, in that market with Plaintiff.  Plaintiff only sells the switch, which retails at less than $70, and not the tuning software itself.

40.    In theory, there is no reason why a consumer necessarily needs to purchase the tuning software from the same company from which they buy the mechanism to switch between the tunes.  By way of analogy, one could purchase a Samsung TV and switch between channels using a "universal" remote control (like what one often finds in hotel rooms).  While Samsung might sell its own remote, it is up to the consumer whether to purchase their remote or purchase someone else's.

41.    However, EFILive collaborated with SoCal Diesel and StarLite to create the software "lock" for the express purpose of preventing Plaintiff's competing switch from interfacing with the EFILive tuning software.  (This would be analogous to Samsung programming its TVs so that only Samsung's remotes would work with it.) This anti-competitive conduct was undertaken not only to "corner" the market on tuning switches, but out of personal animus against Plaintiff and its principals and a desire to keep their mom-and-pop business in particular out of the tuning switch market.

42.    On information and belief, EFILive's founders collaborated with other companies, including SoCal and its principal, to target Extrasensory and its principals from entering the switch market.  On information and belief, some of these third parties were coerced into taking sides with EFILive.

**EFILive Avoids U.S. Jurisdiction**

43.    On information and belief, the Tripps and EFILive have long known that thousands of their customers have been using EFILive's tuning software to modify their diesel truck engines to violate federal and California vehicle emissions standards.

44.    EFILive's CEO and co-founder Paul Blackmore testified under oath that at least 75,000 customers had purchased EFILive's engine tuning software. Although EFILive has claimed that the purpose of its tuning software is to facilitate competitive diesel truck racing, on information and belief, Defendants are well aware that there are nowhere near 75,000 people in the entire country involved in competitive diesel truck racing.  In an "Enforcement Alert" dated December 2020, the EPA wrote:

> Recent EPA Investigations have revealed evidence showing that hundreds of thousands of diesel pickup trucks have had their emissions controls completely removed, and most or all the aftermarket defeat devices used to tamper these trucks were sold under the claim of "competition only." The sheer volume of aftermarket defeat devices belies the assertion that they are only for competition motorsports.

> *https://www.epa.gov/sites/default/files/2020-12/documents/tamperinganddefeatdevices-enfalert.pdf*

45.    On information and belief, EFILive knows that many of the parameters that diesel truck owners use EFILive's software to set their engines to enable their trucks to emit far more carbon dioxide and other dangerous particles than are permitted by law.  (The tagline on the homepage of EFILive's website is "Unlock Your Vehicle's *Maximum* Potential!"—a not-so-subtle allusion to EFILive products' capacity to enable diesel truck owners to circumvent regulatory limits on their vehicles' speed and/or emissions.) There are numerous

videos on YouTube and elsewhere in which truck owners proudly display their modified diesel trucks spewing great plumes of dark gray smoke.

46.     Over the last decade, the EPA has imposed fines upon dozens of manufacturers and suppliers of aftermarket "defeat" devices that enable the circumvention of vehicle emissions standards

47.     Plaintiff is unaware of any action pursued directly against EFILive even though, on information and belief, EFILive is the leading manufacture of tuning software for Cummins diesel engines.  The reason is that as an ostensibly New Zealand-based company, EFILive is "offshore" and so beyond the reach of the EPA's jurisdiction.

48.     The irony of this fiction is that EFILive's own software was developed through reverse-engineering Cummins hardware and software without Cummins's consent. Because the installation of EFILive's software requires writing over the existing operating system, installing EFILive's software can affect the safety of the vehicle and void manufacturer warranties.

49.     So at the same time that EFILive has been hiding behind the fiction that it is an "offshore" company, it has violated American vehicle emissions standards, infringed on the intellectual property rights of an American company, and deprived American consumers of the benefits of the warranty provided by an American company.

**Distributor SoCal Diesel Surreptitiously Acquires Manufacturer EFILive**

50.     For years, EFILive has taken the position that is a foreign company not subject to jurisdiction in the United States or California.  However, it was recently revealed that Defendants Guy and Tracey Tripp, operating through shell corporations, acquired EFILive and attempted to hide its acquisition.

51.     Co-Defendants Guy Tripp and Tracey Tripp, the owners of SoCal Diesel, also own two California corporations (Defendants Trippin and Torque) which themselves own EFILive.

52.     In other words, EFILive was *not* a separate, unaffiliated New Zealand-based entity.  It was wholly owned by California residents through their California shell corporations. Indeed, a "company extract" from the New Zealand Company Register lists EFILive, Limited, has having been registered on February 16, 2022, with Guy Tripp as the owner of all 1,000 shares of ownership. Guy Tripp is a director along with Stephen James Earlly, an accountant in New Zealand, who, on information and belief, is listed as a Director pursuant to legal requirement in New Zealand that a New Zealand company have New Zealand director.

53.     On information and belief, Trippin' and Torque are mere shell companies with no operations and no assets other than ownership of EFILive. Trippin' and Torque were created in late 2021, shortly before the Tripps acquired EFILive in early 2022, and were created for the sole purposes of their taking title to EFILive and transferring their ownership of SoCal Diesel to the same shell companies.  Thus, for *two years*, EFILive has been a wholly-owned subsidiary of the same California corporations that own SoCal Diesel, all of which are owned by Guy and Tracey Tripp.  On information and belief, this fact was obscured from EFILive's customers and the market in general so that it could continue to operate offshore, using the Internet to infiltrate the U.S. market and keep sales flowing to offshore servers.

**Defendants' Market Power and Anti-Competitive Activity**

54.     On information and belief, by adding the unnecessary "lock" algorithm to EFILive's tuning software, and then granting a sham "license", EFILive enabled SoCal Diesel to gain and maintain a dominant position in the

marketplace for Cummins diesel engine tuning switches that it would not have otherwise obtained—particularly given that Plaintiff makes a higher-quality, lower cost alternative tuning switch.  This directly hurts competition and consumers.

55.     On information and belief, the Tripps and SoCal Diesel used the income generated in large part from their anticompetitive conduct to finance their acquisition of EFILive in 2022, in an effort to further consolidate their power and control over the Cummins tuning and diesel market. By acquiring EFILive, they have sought to ensure, and as a practical matter can now ensure, that EFILive will never grant a similar license to any other distributor or manufacturer of Cummins tuning switches.  (StarLite diesel interfaces with a vehicle ECM through a phone app, not a switch, and on information and belief, StarLite has minimal presence in the relevant market.) As such, SoCal Diesel and Tripps endeavor to perpetuate their unlawful tying arrangement, in which consumers acquiring EFILive's tuning software will be more likely to do so from SoCal Diesel, and will be more likely to buy SoCal Diesel's tuning switch, than they otherwise would in an open, unrestricted market for Cummins diesel engine tuning switches.

56.     For a number of years, EFILive was the only manufacturer of switchable tuning software for Cummins diesel engines, and so enjoyed total market dominance. On information and belief, even today, EFILive controls at least half of the market for switchable tuning software for Cummins diesel engines in the United States.[1]  And SoCal Diesel controls more than half of the

---

[1]  Because Defendants have utilized a technological barrier to try to prevent otherwise compatible tuning switches from operating with EFILive's tuning software, the antitrust injury suffered is effectively worldwide. However, as a practical matter, since the vast majority of Cummins diesel engine truck owners are in the U.S., that is the relevant market as defined for purposes of Plaintiff's antitrust claims.

market for EFILive-compatible tuning switches, and nearly 100% of the EFILive-authorized market for the highly popular hardware switches.

57.   The Tripps, through their wholly-owned entities SoCal Diesel and EFILive, have conspired to keep lower-cost, higher-quality competitors like Plaintiff out of the market for tuning switches.

58.   In so doing, they have attempted to, and have, created a vertical monopoly whereby both the manufacturer and distributor of the software and tuning switch for the software are intentionally trying to keep competitor Plaintiff out of the tuning switch market.

59.   In so doing, Defendants have also forced consumers to purchase Defendants' preferred tuning switch together with the tuning software.  Again, there is no necessary reason why the products have to operate this way.  Just as an iPhone could work with headphones manufactured by multiple companies, and thus the headphones can be purchased separately from a manufacturer of the consumer's choosing, here there is no reason why consumers should be forced to acquire both the tuning *software* and the *switch* to change between the tunes from the same parties.  Defendants have tied their tuning software and switches together to enrich themselves to the detriment of consumers—who are forced to purchase a higher-cost, lower-quality switch if they want access to the tuning software—and the detriment of Defendants' competitors, Plaintiff.

60.   Furthermore, by concealing their ownership of EFILive, the Tripps have sought to obtain the monopolistic advantages of owning both the largest manufacturer of Cummins switchable tuning software and the largest manufacturer of Cummins tuning switches, while at the same time seeking to keep environmental regulators from pursuing EFILive by maintaining the fiction that EFILive is "merely" a New Zealand-based company without any basis for asserting domestic jurisdiction over it.

## __FIRST CAUSE OF ACTION__

### __Violations of the Sherman Act § 2 – 15 U.S.C. § 2__

61.     Plaintiff repeats and realleges the allegations contained in all prior paragraphs as if fully set forth herein.

62.     Defendants have engaged in an illegal combination or conspiracy to unreasonably restrain trade.  First, Defendant EFILive, the manufacturer of tuning software for Cummins diesel truck engines, contrived to install an unnecessary "lock" on its software so that only "authorized" tune switching devices would work with its software.  EFILive took this step to ensure that only manufacturers and sellers of "authorized" tune switching devices would be able to sell EFILive's software in the U.S.,and sell their own switching devices along with the software, for the purposes of unreasonably restraining competition, and specifically to harm Plaintiff.

63.     Second, on information and belief, Defendants Guy and Tracey Tripp hold 100% ownership of control and both the tuning software manufacturer, EFILive, and the tuning software reseller and tune switching manufacturer, SoCal Diesel.  They entered into the conspiracy described herein both to restrain trade generally, and to shut out Plaintiff, a competing tune switch manufacturer and seller, from the market.  EFILive has not only refused to deal with Plaintiff, it has, in participation with the Tripps and SoCal Diesel, undertaken active steps to prevent its otherwise compatible tuning switches from working with EFILive's software.

64.     Third, in so doing, Defendants have sought to, and have, reduced competition, in an effort to force customers to purchase SoCal Diesel's inferior and higher priced tuning switch along with EFILive's tuning software, instead of purchasing a lower-priced, higher-quality tune switching product from Plaintiff.

This vertical unreasonable restraint of trade, undertaken in an attempt to and with the actual effect of monopolization, is unlawful under the Sherman Act.

65.    EFILive's tuning software and SoCal Diesel's CSP5 tuning switch are separate and distinct products.  Effectively, EFILive will sell its tuning software in the U.S. only if the buyer also purchases either SoCal Diesel's CSP5 tuning switch, or the tuning app manufactured by EFILive's only other "authorized" U.S. reseller, StarLite.

66.    On information and belief, EFILive has sufficient economic power in the market for tuning software for Cummins diesel truck engines to coerce a substantial number of consumers into purchasing SoCal Diesel's CSP5 tuning switch, and refraining from purchasing tuning switches from Plaintiff.  On information and belief, EFILive is the largest manufacturer of tuning software for Cummins diesel truck engines, enjoying market share in excess of 50%.  At the same time, on information and belief, So-Cal Diesel, as one of only two "authorized" U.S. distributors of EFILive's tuning software (loaded on EFILive's products) (and the only one who makes and sells a hardware switch), controls at least 50% market share in the market for tune switching devices compatible with Cummins diesel truck engines.

67.    In addition, this tying arrangement between EFILive's tuning software and the tune switching devices manufactured by its two "authorized" resellers has restrained competition for a substantial amount of sales in terms of both the quantity and the total dollar volume of sales of Cummins diesel truck engine tuning switches.

68.    Plaintiff is a competitor of Defendants.  Plaintiff is essentially a "mom-and-pop" business.  As a result of Defendants' wrongful and unlawful actions, in addition to the harm suffered by consumers, Plaintiffs have been injured in their property or business.  These injuries were suffered by reason of

Defendants' anti-competitive conduct, and that anti-competitive conduct was a substantial factor in bringing about the harm to Plaintiff.  This injury is of the nature that the antirust laws were designed to protect against.

69.     As a result of this anti-competitive conduct, Plaintiff has suffered actual and consequential damages in an amount to be proven at trial.

70.     Plaintiff is also entitled to prejudgment interest on their damages, treble damages, attorneys' fees and costs of suit, and injunctive relief.

## SECOND CAUSE OF ACTION

### Violations of the Clayton Act § 3 – 15 U.S.C. § 14

71.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

72.     The above-mentioned acts described in connection with the Sherman Act claim have had the effect of substantially lessening competition and/or creating a monopoly in the U.S. market for Cummins tuning switches.

73.     In addition, on information and belief, EFILive has annually renewed its sham "license" to both SoCal Diesel and third-party StarLite Diesel on the condition that they not deal in products made, distributed, or sold by Plaintiffs, including their tuning switches. This condition of the "license" continues to this very day. This, too, was undertaken with the intent to, and has had the effect of, substantially lessening competition and creating a monopoly in the U.S. market for Cummins tuning switches.

74.     As a result of this anti-competitive conduct, Plaintiffs have suffered actual and consequential damages in an amount to be proven at trial.

75.      a result of this anti-competitive conduct, Plaintiffs have suffered actual and consequential damages in an amount to be proven at trial.

76.     Plaintiffs are also entitled to prejudgment interest on their damages, treble damages, attorneys' fees and costs of suit, and injunctive relief.

## THIRD CAUSE OF ACTION

### Interference with Prospective Economic Relations

77.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

78.     Plaintiffs had a reasonable probability of entering into agreements with a number of consumers or down-market resellers of its tuning switches.

79.     Defendants were aware of the nature and existence of these potential contracts.

80.     Defendants have conspired and continue to conspire to prevent Plaintiffs' tuning switches from working with EFILive's tuning software, with the expressed intent of thwarting Plaintiffs' efforts to sell its tuning switches, depriving Plaintiffs of income and harming their reputations.

81.     Defendants have no privilege or legal right to try to disrupt Plaintiffs' existing or prospective economic relations by concocting an artificial barrier to compatibility with EFILive's tuning software.

82.     As a direct and substantial result of these intentional acts of wrongful interference, Plaintiffs have been and will continue to be harmed, in amounts to be proven at trial.

83.     Because Defendants acted not only intentionally but with fraud, malice, and oppression in committing these unprivileged acts of interference, Plaintiffs are also entitled to punitive or exemplary damages.

## FOURTH CAUSE OF ACTION

### Unfair Business Practices – Cal. Bus. & Prof. Code § 17200 *et seq.*

84.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

85.     Plaintiffs have standing to raise a claim under Business and Professions Code Section 17200.  Plaintiffs have suffered an injury in fact.  As discussed above, Defendants' anti-competitive conduct has harmed Plaintiffs' business and preventing them from making sales of their lower-priced, higher-quality tuning switches, to the ultimate detriment of consumers.

86.     As described further above, on information and belief, Defendants have engaged in and continue to engage in unfair and unlawful business practices on several grounds, including but not limited to:

a.     Entering into an unlawful and unreasonable vertical restraint of trade between the manufacturer and "authorized" resellers of EFILive's tuning software, for the purpose and effect of substantially lessening competition and creating a monopoly in the U.S. market for Cummins tuning switches, in violation of the Sherman Act and/or Clayton Act;

b.     Entering into an unlawful and unreasonable tying arrangement between EFILive's tuning software and SoCal Diesel's CSP5 tuning switch, for the purpose and effect of substantially lessening competition and creating a monopoly in the U.S. market for Cummins tuning switches, in violation of the Sherman Act and/or Clayton Act;

c.     Issuing "sham" licenses to SoCal Diesel and StarLite Diesel to resell EFILive's tuning software in the United States on condition that they not deal with products manufactured, distributed, or sold by Plaintiffs, for the purpose and effect of substantially lessening competition and creating a monopoly in the U.S. market for Cummins tuning switches, in violation of the Sherman Act and/or Clayton Act;

d.     Perpetuating the fiction that EFILive is a New Zealand-based company with no affiliation with or connection to the other California-based Defendants, and actively concealing its affiliation with Defendants,

in order to avoid U.S. exposure in connection with EFILive's tuning software for:

       i.     violating the federal Clean Air Act, including 42 U.S.C. § 7522, which prohibits the manufacture or sale of parts or components to be used with a motor vehicle engine where the manufacturer or seller knows or reasonably should know that the product will be installed or used to defeat or bypass features designed to limit harmful emissions beyond those allowable by law;

       ii.    violating analogous California laws regarding the manufacture or sale of aftermarket vehicle emission defeat devices, including California Vehicle Code § 27156; and

       iii.   violating the intellectual property rights of Cummins' own ECM software in developing EFILive's tuning software; and

     e.     Causing EFILive's tuning software to be sold to consumers, without disclosing to them that installation of that software does or likely will void the Cummins' manufacturer's warranty.  This is a material fact of which Defendants are aware is material to consumers, and of which Defendants have superior knowledge of and an obligation to disclosure to consumers, but which Defendants fail to disclosure to consumers with the intent and effect that consumers rely on this material misrepresentation to their detriment and to Defendants' benefit.

87.    Defendants' business practices, as alleged herein, are unfair, unlawful and fraudulent because: (1) the injury to the consumer and to competition is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided relying on the information because Defendants intentionally misled the consuming public.

88.     As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent business practices, consumers, as well as Plaintiff, have been harmed.  Plaintiff specifically have suffered an injury in fact resulting from Defendants' acts of unfair competition in terms of a loss of business as a competitor and harm to reputation in the market for tuning switches.

89.     Pursuant to Business & Professions Code section 17203.010 *et seq*., Plaintiff further seeks an order of this Court enjoining Defendants from continuing to engage, use, or employ their anti-competitive and unfair, unlawful, and fraudulent practices.

90.     In addition, Defendants are liable for civil penalties and attorneys' fees, and are subject to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request by their Complaint:

1.     Compensatory damages;

2.     Consequential damages;

3.     Treble damages;

4.     Punitive or exemplary damages;

5.     Attorneys' fees;

6.     Costs of suit;

7.     Injunctive relief preventing Defendants from continuing to unlawfully and artificially restrain trade and specifically ordering them to remove their algorithmic "lock" whose purpose is to reduce competition and to specifically exclude Plaintiffs from the tuning switch market;

8.     Pre- and post-judgment interest at the maximum allowable rate; and

9.     Such other relief as this Court deems just and proper.

Plaintiffs further hereby demand a jury trial and all causes of action to which they are entitled by law to a trial by jury.

Dated: March 22, 2024             KARISH & BJORGUM, PC

By: _____

A. Eric Bjorgum
Attorneys for Plaintiff
EXTRASENSORY SOFTWARE, INC.,

COMPLAINT

24

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff Extrasensory Software, Inc. hereby demands a trial by jury to decide all issues so triable in this case.

DATED:  March 24, 2024                    Respectfully submitted,


                                                              KARISH & BJORGUM, PC


                                                              By /s/ Eric Bjorgum_____
                                                              Eric Bjorgum
                                                              Attorneys for Plaintiff
                                                              EXTRASENSORY SOFTWARE, INC.